UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| NEW LEAF DATA SERVICES, LLC, | No. 3:20-cv-00204 (KAD) |
| *Plaintiff*, | |
| v. | |
| PANXCHANGE, INC., | September 16, 2020 |
| *Defendant* | |

MEMORANDUM OF DECISION RE:
DEFENDANT'S MOTION TO DISMISS (ECF NO. 14) AND
PLAINTIFF'S MOTION TO TRANSFER TO ANOTHER DISTRICT (ECF NO. 22)

Kari A. Dooley, United States District Judge:

Pending before the Court is a motion to dismiss for lack of personal jurisdiction filed by Defendant PanXchange, Inc. ("PanXchange," or the "Defendant") pursuant to Fed. R. Civ. P. 12(b)(2). (ECF No. 14.) Also pending is a motion to transfer this action to the United States District Court for the District of Delaware, filed by Plaintiff New Leaf Data Services, LLC ("New Leaf" or the "Plaintiff) "in lieu of opposing Defendant['s] . . . Motion to Dismiss." (ECF No. 22.) PanXchange opposes New Leaf's motion to transfer and argues that this Court should either grant its motion to dismiss or transfer the action to the District of Colorado if transfer is deemed warranted. (ECF No. 24.) In reply, New Leaf maintains that this action should be transferred to Delaware and further that transfer to the District of Colorado would be unjust. (ECF No. 26.) For the reasons that follow, the Court DENIES the Plaintiff's motion to transfer to the District of Delaware and instead ORDERS this action transferred to the United States District Court for the

1

District of Colorado pursuant to 28 U.S.C. § 1404(a) and DENIES as moot the Defendant's motion to dismiss.

**Background and Procedural History**

New Leaf is a Connecticut limited liability company with its principal place of business in Stamford, Connecticut.  (Compl. ¶ 3, ECF No. 1.)  It describes itself as "a leading provider of financial, business, and industry data for the North American cannabis and hemp markets."  (*Id*. ¶ 8.)  New Leaf alleges that it owns several federal trademark registrations, including one for HEMP BENCHMARKS, Registration No. 5079914 (the "New Leaf Mark," or the "Mark"), for which it possesses all rights, title, and interest, and which it has used without interruption since at least 2016.  (*Id.* ¶¶ 9–11; Ex. A.)  New Leaf uses the Mark to designate "products and services originating from, sponsored by, or licensed by New Leaf."  (*Id*. ¶ 13.)  The Mark appears on two active websites maintained by New Leaf: www.cannibasbenchmarks.com, and www.hempbenchmarks.com.  (*Id*. ¶ 12; Ex. B.)

PanXchange is a physical commodity trading company incorporated in Delaware, with its principal place of business in Denver, Colorado.  (*Id*. ¶¶ 4, 16.)  New Leaf alleges that PanXchange entered the hemp pricing and commodity trading market long after New Leaf began using the New Leaf Mark.  (*Id*. ¶ 18.)  New Leaf further alleges upon information and belief that PanXchange discovered the Mark while searching for publicly available hemp commodity pricing information and decided to adopt the Mark, including by using it in several allegedly infringing marks and URLs beginning around January 2019.  (*Id*. ¶¶ 18–21; Exs. D, E.)  Finally, New Leaf alleges that PanXchange's use of the Mark has generated confusion in the marketplace and "creates the wrongful impression that PanXchange is authorized, sponsored, or approved by New Leaf even though it is not."  (*Id*. ¶¶ 27, 32.)  PanXchange acknowledges that it began providing a monthly

report through its website in January 2019, which it later named "PanXchange® Hemp: Benchmarks & Analysis" (the "PanXchange® Reports"), and which was developed in-house, along with its website, by its employees in Colorado (Lerner Decl. ¶¶ 7, 10–11, ECF No. 24-1), but denies that any infringement occurred. The PanXchange® Reports were initially available from January 2019 through January 2020 at no cost through PanXchange's website and have been sold to customers via a paid annual subscription model since February 2020. (*Id*. ¶¶ 7–8.) Soon after discovering PanXchange's alleged use of the New Leaf Mark in December 2019, New Leaf sent PanXchange a letter demanding that it cease its allegedly infringing activities. (Compl. ¶ 23; Ex. F.) With the parties unable to reach a resolution, this lawsuit followed.

New Leaf brings claims against PanXchange for trademark infringement and false designation of origin and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114, 1125 (Counts One and Two, respectively), common law trademark infringement (Count III), and a violation of the Connecticut Unfair Trade Practices Act (Count IV). It seeks, *inter alia*, a temporary restraining order and a preliminary and permanent injunction "against PanXchange's continued unauthorized, improper and willful commercial use and exploitation of New Leaf's trademark" as well as damages. (*Id*. ¶ 2.)

On March 27, 2020, PanXchange filed a motion to dismiss in which it asserted that the Court lacks both general and specific personal jurisdiction over PanXchange because it is neither incorporated nor maintains its principal place of business in Connecticut, cannot be reached under Connecticut's long-arm statute, and has insufficient minimum contacts with Connecticut to satisfy constitutional due process. Rather than oppose the motion to dismiss, New Leaf filed a motion to transfer this action to the United States District Court for the District of Delaware. Although New Leaf maintains that it has made out a *prima facie* case of personal jurisdiction over PanXchange

pursuant to Connecticut's long-arm statute, citing Conn. Gen. Stat. §§ 52-59b(a)(1), and (a)(2)[1] (*see* Pl.'s Mem. at 6–9, ECF No. 22-1), it seeks a transfer to the District of Delaware "in the interests of justice and judicial economy." (*Id*. at 10.)  PanXchange, by contrast, contends that "Delaware has no meaningful connection to this case," whereas "Colorado is where PanXchange's principal place of business, the relevant evidence, and witnesses for *both parties* are located." (Def.'s Opp. at 1, ECF No 24.)  The parties' current dispute thus boils down to whether this Court should transfer the action to the District of Delaware or to the District of Colorado.

**Legal Standard**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "The movant bears the burden of establishing the propriety of transfer by a clear and convincing showing." *Wilson v. DirectBuy, Inc.*, 821 F. Supp. 2d 510, 513 (D. Conn. 2011).[2] "A district court must undertake a two-part inquiry in determining whether transfer is appropriate. First, the court must determine whether the action sought to be transferred is one that could originally have been brought in the transferee district." *Jones v. Walgreen Co.*, 463 F. Supp. 2d 267, 271 (D. Conn. 2006). "Second, the court must evaluate whether transfer is warranted, considering several specific factors related to 'the convenience of the parties and witnesses and in the interest of justice.'" *Id*. (quoting 28 U.S.C. § 1404(a)) (brackets omitted).  These factors include:

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of

---

[1] As PanXchange correctly points out in its motion to dismiss, this statute only applies to nonresident individuals, foreign partnerships, and foreign voluntary associations. The long-arm statute that would govern in this circumstance is Conn. Gen. Stat. § 33-929(f), which applies to foreign corporations.

[2] Because New Leaf and PanXchange each seek transfer to a different venue, the Court treats each as a moving party for purposes of this analysis.

parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties.

*Id.* (quoting *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106–07 (2d Cir. 2006)).  In addition, courts may consider "(8) the forum's familiarity with the governing law; and (9) trial efficiency and the interests of justice." *Casey v. Odwalla, Inc.*, 338 F. Supp. 3d 284, 292 (S.D.N.Y. 2018). No single factor controls the outcome "and the relative weight of each factor depends on the particular circumstances of the case." *Id.* (quotation marks and citation omitted). Ultimately, "[w]hether to grant a motion to transfer venue lies within the broad discretion of the district court and will be 'determined upon notions of convenience and fairness on a case-by-case basis.'" *Collins v. Kohl's Dep't Stores, Inc.*, No. 3:18-CV-00065 (VAB), 2018 WL 2926301, at *2 (D. Conn. June 11, 2018) (quoting *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992)).[3]

---

[3] The parties also cite 28 U.S.C. § 1406(a), which provides that if a case is filed "laying venue in the wrong division or district," the district court shall either "dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  In addition to curing improper venue, this provision has been recognized as an available transfer authority "to surmount an obstacle, such as lack of jurisdiction, which would have precluded suit in the transferor district." *Spar, Inc. v. Info. Res., Inc.*, 956 F.2d 392, 394 (2d Cir. 1992).  New Leaf further cites 28 U.S.C. § 1631, which provides that if the "court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed or noticed."  The Second Circuit has suggested that transfer pursuant to Section 1631 may be limited to instances in which the district court lacks subject matter jurisdiction, *see SongByrd, Inc. v. Estate of Grossman*, 206 F.3d 172, 179 n.9 (2d Cir. 2000), an issue not before this Court.  Because New Leaf seeks transfer "in lieu of deciding PanXchange's motion to dismiss" (*see* Pl.'s Mem. at 1), and because the parties agree that jurisdiction is proper in either the District of Delaware or the District of Colorado, this Court need not resolve the issue of personal jurisdiction in the District of Connecticut in order to assess the propriety of transferring this matter.  *See Wilson*, 821 F. Supp. 2d at 515 n.2 ("Because the court is persuaded that transfer is appropriate under section 1404(a), it is unnecessary to decide the issue under sections 1406(a) and 1631."); *see also Brown v. New York*, 947 F. Supp. 2d 317, 323 (E.D.N.Y. 2013) ("The court need not reach the question of whether venue is proper, or whether defendants sufficiently raised a claim of improper venue, as the court finds sufficient cause to exercise its broad discretion to transfer venue pursuant to § 1404(a)").

In addition, while PanXchange requests dismissal instead of transfer, citing again the Court's purported lack of personal jurisdiction, transfer is often favored to cure procedural defects such as lack of personal jurisdiction in any event.  *See, e.g.*, *Bernaud v. Sazdov*, No. 3:15-CV-1239 (SRU), 2016 WL 3546202, at *6 (D. Conn. June 23, 2016).  The Court will therefore confine its discretion to "evaluating convenience and whether the transfer is in the interest of justice."  *Cartier v. D & D Jewelry Imports*, 510 F. Supp. 2d 344, 346 (S.D.N.Y. 2007).

**Discussion**

As a threshold matter, the Court addresses New Leaf's position that "[t]he Court should not consider PanXchange's arguments regarding transfer to Colorado unless they were presented in the form of a [separate] motion." (Pl.'s Reply at 6.) The Court disagrees. The Court's authority to order transfer *sua sponte* pursuant to Section 1404(a) is well established. *See, e.g.*, *Ferrier v. Q Link Wireless*, 413 F. Supp. 3d 135, 138 (E.D.N.Y. 2018) (citing *Lead Indus. Ass'n, Inc. v. Occupational Safety & Health Admin.*, 610 F.2d 70, 79 n.17 (2d Cir. 1979)). And unlike other district courts in this Circuit, the Local Rules of this District do not dictate a contrary procedure. *See, e.g.*, *In re Westinghouse Elec. Co. LLC*, No. 18-CV-3942 (VSB), 2019 WL 1349500, at *8 n.12 (S.D.N.Y. Mar. 25, 2019) (declining to consider Plaintiffs' argument that an alternate forum was more appropriate due to local rule "requiring 'an opposing party who seeks relief that goes beyond the denial of the motion' to file a 'notice of motion'" specifying the relief sought). Given that the parties have fully briefed their respective preferences regarding the transfer of this litigation, the Court will not require PanXchange to undertake the procedural formality of filing its own Section 1404(a) motion and instead proceeds to the substance of the parties' arguments.[4]

**The Action Could Have Been Brought in Colorado or Delaware**

At the first step of the Court's two-part inquiry, "[t]o decide whether an action 'might have been brought' in the proposed transferee forum, the court must first determine whether the defendants are subject to personal jurisdiction in that forum, and whether venue would properly lie there." *Wilson*, 821 F. Supp. 2d at 515. The parties agree that this action could have been brought in the District of Delaware, which is where PanXchange is incorporated. (Pl.'s Mem. at

---

[4] New Leaf also suggests that the Court should not countenance PanXchange's choice of forum because PanXchange neglected to alert New Leaf that it believed Colorado was a proper forum before filing its opposition brief (Pl.'s Reply at 1–2), but the Court declines to draw from PanXchange's timely filings any inference of bad faith.

6

5; Def.'s Opp. at 8.) And while New Leaf does not specifically acknowledge that the action could have been brought in the District of Colorado, there is no question that PanXChange is subject to personal jurisdiction in Colorado insofar as its principal place of business is located in Denver, Colorado. (*See* Lerner Decl. ¶ 4.) Venue is also accordingly proper in the District of Colorado. *See* 28 U.S.C. § 1391(b)(1) ("A civil action may be brought in . . . a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located"). Because this action could have been brought in either District, the Court will proceed to the convenience analysis.

**New Leaf's Choice of Forum**

As to the first factor, although a plaintiff's choice of forum would ordinarily be given great deference, "when plaintiffs choose a forum that is not any plaintiff's home forum, that choice of forum is accorded considerably less weight." *Allstate Prop. & Cas. Ins. Co. v. Titeflex Corp.*, No. 3:14-CV-945 (MPS), 2015 WL 1825918, at *3 (D. Conn. Apr. 22, 2015) (quoting *Costello v. Home Depot USA, Inc.*, 888 F. Supp.2d 258, 267 (D. Conn. 2012)) (brackets omitted); *see also United Rentals (N. Am.) Inc. v. Conti Enterprises, Inc.*, No. 3:15-CV-298 (JCH), 2015 WL 7257864, at *9 (D. Conn. Nov. 17, 2015) ("When it is the plaintiff, rather than the defendant, who moves to transfer a case to another forum, the usual presumptions as to plaintiff's choice of forum are not appropriate") (quotation marks and citation omitted). As between Delaware and Colorado, this factor is therefore neutral.

**The Convenience of the Parties and Witnesses**

"The convenience of the parties and witnesses are generally the most important factors in a court's determination of whether to grant a motion to transfer." *Tross v. Ritz Carlton Hotel Co., LLC*, 928 F. Supp. 2d 498, 505 (D. Conn. 2013) (quotation marks and citation omitted). "In an

infringement action, the most critical witnesses may be those officers and employees who were involved in the design, production, and sale of the allegedly infringing products." *ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542, 548 (S.D.N.Y. 2008) (quotation marks, brackets, and citation omitted).

New Leaf identifies no witnesses for whom litigating in Delaware would be more convenient, and instead argues in conclusory fashion that "Delaware is a middle-ground for both parties." (Pl.'s Reply at 5.) PanXchange, on the other hand, asserts that it "has no employees in Delaware," whereas "at least six PanXchange employees and one former PanXchange employee with knowledge regarding the creation, research, marketing, design and development, and subscribers of the PanXchange® Reports are located in Colorado."[5] (Def.'s Opp. at 2–3; *see also* Lerner Decl. ¶¶ 12–13.) PanXchange's CEO, Julie Lerner, is "not aware of any individual located in Delaware" with such knowledge of the PanXchange® Reports. (Lerner Decl. ¶ 15.) PanXchange further points out that four of the eight members of the management team identified on New Leaf's own Hemp Benchmarks webpage are located in Colorado, according to their respective LinkedIn profiles.[6] (Def.'s Opp. at 5–6; Strauss Decl. Exs. A–E, ECF Nos. 24-3, 24-4, 24-5, 24-6, 24-7.) The LinkedIn profile for Cannabis Benchmarks®, which is identified as "a division of New Leaf Data Services, LLC," also cites "offices in Connecticut, New York and Colorado." (Strauss. Decl. Ex. J, ECF No. 24-12.)

---

[5] Those PanXchange employees are identified as: Julie Lerner, the company's CEO; Michael Miller, Vice President of Technology; Alexander Rados, Vice President of Hemp Markets; RJ Hopp, Director of Hemp Markets; Ian Duden, Business Development; Elena Lopez Del Carril, currently Communications and Content Manager and previously responsible for PanXchange's Commodity Market Research and Data Management, and Charlie Stephens, a former employee who served as the company's Vice President of Commodity Market Development. (Lerner Decl. ¶ 13.)

[6] Three of these New Leaf employees are identified via their LinkedIn profiles as holding positions with Cannabis Benchmarks®, a division of New Leaf. They are: Adam Koh, Editorial Director; Keith Holecek, Managing Director of Data Operations and Client Services; and Kari Tewalt, Operations and Strategic Projects. (Strauss Decl. Exs. B–D.) In addition, Bruce Kennedy is identified in his LinkedIn profile as a Hemp Reporter and Analyst. (*Id.* Ex. A.)

New Leaf does not refute these contentions. Instead, it argues that because New Leaf has accepted the burden of requiring its employees to travel to Delaware, the Colorado-based New Leaf employees that PanXchange identifies are "irrelevant to the Court's consideration of New Leaf's Motion." (Pl.'s Reply at 7.) New Leaf also asserts that "[p]arty witnesses are not a basis to transfer as such witnesses can be accommodated for depositions and will be compelled to testify wherever the case lies." (*Id.* at 6–7.) While the latter half of this statement may be true, this observation speaks to the witnesses' availability by subpoena power or otherwise, *see, e.g.*, *Advanced Fiber Techs. (AFT) Tr. v. J & L Fiber Servs., Inc.*, No. 07-CV-1191 (LEK/DRH), 2008 WL 4890377, at *4 (N.D.N.Y. Nov. 12, 2008) (observing that "any employees of a party, despite their geographic location, can reasonably be expected to testify as witnesses at trial and their availability is not a consideration")—an inquiry wholly separate from the convenience of witnesses for purposes of a Section 1404(a) analysis. Indeed, when considering the convenience of the parties and their witnesses, by contrast, courts routinely look to the location of employees as a relevant factor. *See, e.g.*, *Jones*, 463 F. Supp. 2d at 277 ("Because. . . a disproportionate number of managers and corporate employees involved in the development and implementation of [the defendant's] hiring and promotion decisions and policies are located in Illinois, the Court concludes that the convenience of witnesses in this pattern and practice discrimination case weighs strongly in favor of transfer."); *Butcher v. Gerber Prod. Co.*, No. 98-CV-1819 (RWS), 1998 WL 437150, at *4 (S.D.N.Y. Aug. 3, 1998) (transferring case to Western District of Michigan and considering the fact that three of the five current or former employees of the defendant with knowledge of the facts underlying the plaintiffs' claims resided in Michigan as well as the fact that the defendant was headquartered in Michigan). And in fact, in *Wilson*, the plaintiffs made the same argument that New Leaf presents here—"that the convenience of party witnesses should bear

9

less weight than the convenience of non-party witnesses." 821 F. Supp. 2d at 517. As a general proposition, the Court does not disagree with this assertion, *see, e.g.*, *Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC*, 324 F. Supp. 3d 366, 375 (W.D.N.Y. 2018) ("The convenience of non-party witnesses is accorded more weight than that of party witnesses") (quoting *Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F. Supp. 2d 395, 402 (S.D.N.Y. 2005)), because access to non-party witnesses may be more difficult than access to party witnesses. But where, as here, Plaintiff does not identify any non-party witnesses for whom Delaware would be a more convenient forum, the argument is of no moment. And of course, it did not carry the day in *Wilson* either, as the court still found that this factor favored transfer to the Northern District of Indiana where, *inter alia*, the defendants identified eight corporate executives who worked in Indiana and were likely to be key witnesses. *Wilson*, 821 F. Supp. 2d at 517. Similarly, PanXchange has identified six of its own employees and four of New Leaf's employees with potential relevant knowledge of the facts at issue in this suit who are located in Colorado. The convenience of the witnesses accordingly strongly favors transfer to the District of Colorado.

As to the convenience to the parties themselves, the Court appreciates that New Leaf is headquartered in Connecticut and travel to Delaware would be more convenient than travel to Colorado based simply on the physical distance between the respective jurisdictions. On the other hand, New Leaf does not refute that it maintains a local office in Colorado. And given the undeniable convenience to PanXchange and its employees who reside in Colorado, the Court concludes that this factor likewise favors transfer to Colorado.

### The Locus of Operative Facts

"The location of operative facts underlying a claim is a key factor in determining a motion to transfer venue." *Armor All/STP Prod. Co. v. TSI Prod., Inc.*, No. 3:17-CV-1131 (MPS), 2018

WL 9812123, at *4 (D. Conn. Aug. 30, 2018) (quoting *Charter Oak Fire Ins. Co. v. Broan-Nutone, L.L.C.*, 294 F. Supp. 2d 218, 220 (D. Conn. 2003)).  "In actions alleging trademark infringement or unfair competition, courts in this circuit have held the locus of operative facts to be in the initially chosen forum if acts of infringement, dilution, or unfair competition occur in that forum." *Id*. (quoting *ESPN*, 581 F. Supp. 2d at 549) (brackets omitted).  This analysis often turns on whether allegedly infringing products are sold in the chosen forum. *See ESPN*, 581 F. Supp. 2d at 549 (concluding that the fact that the allegedly infringing products were sold in New York favored retaining jurisdiction in the Southern District of New York); *see also CYI, Inc. v. Ja-Ru, Inc.*, 913 F. Supp. 2d 16, 19 (S.D.N.Y. 2012) ("Courts following this rule have suggested that the location of consumer confusion is reflective of the locus of operative facts in such cases").  "Still, some courts also weigh 'the location where the allegedly infringing product was designed and developed.'" *Armor All/STP Prod. Co.*, 2018 WL 9812123, at *4 (quoting *Confectionary Arts Int'l, LLC v. CK Prod. LLC*, No. 3:16-CV-2015 (JBA), 2018 WL 1141357, at *11 (D. Conn. Mar. 1, 2018)); *see also CIY, Inc*., 913 F. Supp. 2d at 21 (declining to follow rule "that in-district sales of an allegedly infringing product, standing alone, require a finding that this district is the locus of operative facts despite sales in other districts" where "the design and development of the allegedly infringing products" was also a relevant consideration).

Here, the Complaint alleges that PanXchange's use of the New Leaf mark has caused confusion (*e.g*., Compl. ¶ 27) but it does not specify from which forum any consumer may have accessed the PanXchange website or to which the allegedly infringing reports may have been sent.[7] And since the allegedly infringing website can be accessed from anywhere in the world, the situs

---

[7] As evidence of consumer confusion, the complaint attaches a LinkedIn post from a third party who tagged New Leaf's CEO, Jonathan Rubin, in a "December 2019 Hemp Market Update" published by PanXchange. (Compl. ¶ 26; Ex. G.)  But the attachment does not identify the location of the third party or any other consumer.

11

of the consumer "confusion" or the location of the infringing product, as a consideration, is of lesser import in this case. *See 800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 135 (S.D.N.Y. 1994) ("Assuming that instances of customer confusion constitute part of the action's operative facts, and that these instances are construed to occur at the situs from where the customer places the call, then every state where both numbers are in use and advertised could be considered a valid locus of operative facts" in action alleging trademark infringement and unfair competition for alleged infringement of the "800-Flowers" phone mnemonic, and concluding instead that state where defendant engaged in allegedly misleading conduct was the locus of operative facts). Further, PanXchange represents that it has not specifically directed its advertising toward consumers in Delaware and does not have any paid subscribers to the PanXchange® reports who are located in Delaware. (Lerner Decl. ¶¶ 9, 18.) The allegedly infringing reports and website, by contrast, were developed at PanXchange's headquarters in Colorado (*id.* ¶¶ 10–11)—which, as noted, is a factor that is also appropriately considered on a motion to transfer. *Armor All/STP Prod. Co.*, 2018 WL 9812123, at *4 (citing *Confectionary Arts*, 2018 WL 1141357, at *11); *see also Cartier*, 510 F. Supp.2d at 346–47 (finding that this factor favored transfer to California where "the actual subject of this litigation, which is defendants' allegedly infringing activities, occurs largely in California"). For these reasons, and in the absence of any evidence that the alleged acts of infringement occurred in Delaware, the Court finds that this factor weighs in favor of transfer to Colorado.

### The Location of Relevant Documents and Ease of Access to Evidence

"Although the location of relevant documents is entitled to some weight, modern photocopying technology and electronic storage deprive this issue of practical or legal weight." *Charter Oak*, 294 F. Supp. 2d at 221. "However, in infringement cases, it makes sense that

the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weigh in favor of transfer to that location." *ESPN*, 581 F. Supp. 2d at 548–49 (quotation marks and citation omitted).   As New Leaf has identified no evidence—documentary or otherwise—that exists in Delaware, and because evidence regarding the creation and distribution of the allegedly infringing website and reports is located at PanXchange's headquarters in Colorado, this factor weighs in favor of transfer to the District of Colorado.

### The Availability of Process to Compel Unwilling Witnesses to Testify

As discussed above, "[t]his factor is generally relevant only with respect to third-party witnesses, since employees of the parties will as a practical matter be available in any venue by virtue of the employment relationship." *MAK Mktg., Inc. v. Kalapos*, 620 F. Supp. 2d 295, 310 (D. Conn. 2009) (quotation marks and citation omitted)." With regard to third party witnesses, the Federal Rules of Civil Procedure "provide[] that a district court may command testimony or production of documents 'within 100 miles of where the person resides, is employed, or regularly transacts business in person.'" *Dickerson v. Novartis Corp.*, 315 F.R.D. 18, 28 (S.D.N.Y. 2016) (quoting Fed. R. Civ. P. 45(c)).  "The weight given this factor must, however, depend on an assessment of the availability of alternative procedures for preserving those witnesses' testimony, the importance of having them testify live and the importance of other witnesses, whose live appearance may be prevented by a transfer."  *Id.* (quotation marks and citation omitted). Moreover, "the ability to conduct video depositions of witnesses reduces the chance that the choice of a particular forum will significantly hamper either side's ability to provide testimony of individuals otherwise unable to travel to testify in person." *Tross*, 928 F. Supp. 2d at 506.

PanXchange has identified one witness who may need to be compelled to testify—Charlie Stephens, PanXchange's former Vice President for Commodity Market Development, who now works for another company in Colorado. (Lerner Decl. ¶ 13.) New Leaf, on the other hand, has not identified any witness with respect to whom the District Court in Delaware might need to exercise its subpoena power. But because PanXchange has not provided any information regarding the substance of Mr. Stephens's anticipated testimony or established that it is particularly critical to the presentation of its case, the Court does not attribute great weight to this factor and finds that it is largely neutral. *See MAK Mktg*, 620 F. Supp. 2d at 311.

**Other Relevant Factors**

While courts consider "the relative means of the parties" on a motion to transfer, *e.g.*, *Jones*, 463 F. Supp. 2d at 271, neither New Leaf nor PanXchange has offered any substantive analysis of this factor. "Courts may consider the relative financial hardship to litigants in prosecuting or defending an action in a particular forum." *Wilson*, 821 F. Supp. 2d at 518. While the Court recognizes that transfer to Delaware might generate less of a hardship for New Leaf due to that District's relative proximity to the company's Connecticut headquarters, neither party has offices in Delaware, whereas both the Plaintiff and the Defendant have offices in Colorado. This factor is therefore neutral or slightly favors transfer to the District of Colorado.

As for the forum's familiarity with the applicable law, "[f]ederal courts are presumed to be equally familiar with federal law," *id.* at 519, and so the district courts in the District of Delaware or Colorado are equally well positioned to adjudicate the Plaintiff's federal Lanham Act claims. Federal courts are likewise "deemed capable of applying the substantive law of other states," *MAK Mktg*., 620 F. Supp. 2d at 311–12 (quotation marks and citation omitted), and so the same conclusion holds with respect to New Leaf's state law claims  This factor is neutral.

Finally, because "this case is in its infancy … and no discovery has yet been conducted" transfer, as a general matter, might be favored in the interest of efficiency or judicial economy. *Brown*, 947 F. Supp. 2d at 326 (quotation marks and citation omitted). The parties have not, however, put forth any position as to whether trial efficiency or judicial economy would be better served in one District versus the other. This factor is neutral.

In sum, as set forth above, the various factors bearing on the transfer inquiry favor transfer to the District of Colorado or are neutral. While New Leaf emphasizes the propriety of litigation in Delaware because PanXchange is incorporated there, this argument merely confirms that personal jurisdiction lies in the District of Delaware. The Plaintiff has not identified any relevant factor, by contrast, that weighs in favor of transfer to the District of Delaware under the convenience analysis required by Section 1404(a).

**Conclusion**

For the foregoing reasons, the Court denies the Plaintiff's motion to transfer to the District of Delaware and instead orders this action transferred to the United States District Court for the District of Colorado pursuant to 28 U.S.C. § 1404(a). The Defendant's motion to dismiss is denied as moot.

**SO ORDERED** at Bridgeport, Connecticut, this 16th day of September 2020.

*/s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE